SAMUEL, Judge.
This suit for a declaratory judgment and an injunction was filed on July 2, 1964. The defendants are the City of New Orleans and the Mayor and Councilmen of that city. Plaintiff, who alleges he is a resident taxpayer of the City of New Orleans and that he brings the suit as a class action, seeks a judgment declaring that the New Orleans Railroad Terminal Board expired on June 30, 1962, or alternatively on April 16, 1964, with all of its duties and responsibilities discharged and that the exercise of any act or function by the Board after said expiration date is unauthorized, null and void and to no effect. He also seeks an injunction restraining and prohibiting the defendants from giving effect or recognition to or sanctioning any action or function of the Board from its expiration date and from reappointing or confirming any member of the Board. The petition alleges that the City is now considering the building of additional grade separations in which considerations the Board is acting and functioning on behalf of the City.
The defendants filed exceptions of no cause or right of action and an answer to the petition. After a hearing on the exceptions the trial court maintained the same and dismissed the suit at plaintiff’s cost. Plaintiff applied to this court for remedial writs, which application was refused, and *689 then perfected this appeal from the judgment on the exceptions.
The exceptions are based on the following grounds: (1) that the New Orleans Railroad Terminal Board is a validly existing legal entity and agency of the City of New Orleans; (2) that the petition does not set forth a justiciable controversy for declaratory relief; and (3) that the petition does not contain such factual allegations relative to injury suffered as are necessary to warrant the granting of injunc-tive relief. Thus the first question presented for our consideration is whether or not the New Orleans Railroad Terminal Board has expired.
The New Orleans Railroad Terminal Board came into, and was continued in, existence in connection with the construction and use of a Union Passenger Terminal in the City of New Orleans. It was created by Ordinance No. 16,235 C.C.S., adopted by the City of New Orleans on June 5, 1945, “ * * * to act for and on behalf of the City of New Orleans in its deliberations and negotiations with the railroad carriers, and any and all other interested parties, for the purpose of supervising the acquisition, construction, maintenance and operation of one or more railroad passenger stations, with all approaches thereto and appurtenances thereof, and for the purpose of minimizing interference caused by railroad traffic of any sort with the use of the streets, thoroughfares, and roads, and/or the proper development of the City of New Orleans.”
Ordinance No. 16,999 C.C.S., adopted September 19, 1947, approved the Union Passenger Terminal Agreement and authorized and directed the Mayor to sign and execute the same on behalf of the City of New Orleans. Section 3 of that ordinance provided that the New Orleans Railroad Terminal Board “shall have such powers, authority and duties as are specified” in the Agreement.
On October 22, 1947, pursuant to the provisions of Ordinance No. 16,999 C.C.S. and under the authority of Article XIV, § 31.3 of the Constitution of Louisiana, LSA, the Union Passenger Terminal Agreement was executed between the City of New Orleans and various railroad carriers. The Agreement provided, among other things, for the construction of certain capital improvements, including the Union Passenger Terminal, and for numerous grade separations. Under the terms of the Agreement the New Orleans Railroad Terminal Board was designated as the agency to represent and act for the City in the performance of the contract. Section 1, paragraph B of the Agreement provides, in part, as follows:
“Whenever the City, pursuant to the terms of this agreement, is to acquire any land or other property, construct any facilities including grade separations, or to do any work of any sort, such acquisition, construction or doing of work, including the planning and design thereof, shall be under the supervision and control of the Terminal Board; ”.
By Ordinance No. 17,081 C.C.S., adopted December 12, 1947, the City acknowledged the continued existence of the Board by virtue of the provisions of the aforesaid Ordinances Nos. 16,235 and 16,999 and of § 4 of the Charter of the City of New Orleans as amended by Act 301 of 1946 and reestablished the Board to act for and on behalf of the City of New Orleans in carrying out and performing “all duties, obligations and responsibilities” delegated to the Board by the aforesaid Union Passenger Terminal Agreement. Section 2 of the ordinance authorizes and directs the Mayor to appoint to the Board certain named citizens of the city “to serve until June 30th, 1962, unless the complete discharge of the duties, obligations and responsibilities” delegated to the Board was accomplished sooner.
Sections 11 and 12 of the Terminal Agreement provide the terms and conditions under which grade separations are *690 to be constructed. Paragraph B of Section 11 states that certain designated grade separations which the City agrees to provide shall be completed within 18 months after ■completion date, while other designated grade separations may be commenced by the City, at its option, at any time within 10 years after completion date. Paragraph C of Section 11 provides for a division between the City and the railway carriers of the cost of construction of all designated grade separations which the City agrees to provide in Section 11, and paragraph B ■of the same section further provides that the obligations of the carriers (obviously including the payment of their share of the cost as set out in the section) shall become null and void with respect to the construction of any optional grade separation not ■commenced by the City within the 10 year period. The litigants agree that no grade ■separations commenced within the 10 year time period remain uncompleted. Section 12, paragraph C provides for a division between the City and the carriers of the cost of construction by the City of any grade separation not constructed pursuant to Section 11 if such construction is undertaken within 20 years after completion date.
The litigants agree that the Terminal Agreement provides for a completion date which, according to the definition thereof as found within the Agreement, is April 16, 1954.
Plaintiff makes the following contentions: (1) that under the aforesaid Ordinance No. 17,081 the life of the Board came to .an end on or prior to June 30, 1962; and (2) that the grade separations the City is now considering will not be built under the 'Terminal Agreement so that if the life of the Board is not limited to June 30, 1962 under Ordinance No. 17,081, it is limited to 10 years' after April 16, 1954, i. e., April 16, 1964, under Section 11, paragraph B ■of the Agreement.
We do not agree with plaintiff’s first ■contention. Nothing in Ordinance No. 17,081 evidences an intention, as argued by plaintiff, to limit the life of the Board to June 30, 1962 or sooner. As we have pointed out, Section 2 of Ordinance No. 17,081, the portion of the ordinance pertinent to plaintiff’s contention, simply authorized and directed the Mayor to appoint to the Board certain named citizens of the City “to serve until June 30, 1962, unless the complete discharge of the duties, obligations and responsibilities” delegated to the Board were accomplished sooner. Clearly the date mentioned, June 30, 1962, or sooner, has reference to the term during which the named appointees are to serve; it does not refer to any time when the life of the Board shall expire. Any doubt as to this conclusion was removed by Section 10-102(2) of the Charter of the City of New Orleans. Ordinance No. 17,081 antedates the Charter; the ordinance was adopted December 12, 1947 and the Charter became effective May 1, 1954. Section 10-102(2) of the Charter provides, in part:
“The New Orleans Railroad Terminal Board shall have the duties and powers assigned to it by ordinances and contracts of the City, and shall he conthmed until its obligations have been completely discharged.” (Emphasis ours).
Plaintiff’s second contention is also without merit. He argues that the building of additional grade separations now being considered by the City come under Section 12 and not Section 11 of the Agreement, that while the City is required to construct grade separations under Section 11 it has no obligation to construct grade separations under Section 12, that apparently a new agreement must be entered into between the City and the carrier or carriers involved in order to use the cost division established in Section 12, and that construction under Section 12 does not constitute constructing facilities pursuant ' to the terms of the Agreement.
We agree that the contemplated work does not come under Section 11. The 10 *691 year period having elapsed and all work commenced within that period having been completed, Section 11 has no further application. But, as plaintiff concedes, the work now being contemplated does come under the provisions of Section 12.
Both Sections 11 and 12 provide the terms and conditions under which grade separations are to be constructed and both provide for a division of the cost thereof between the City and the carriers. As we have pointed out, Section 11 is mandatory only as to some of the separations designated therein. The City is under no obligation to construct other grade separations designated but may commence these, at its option, within 10 years after completion date. If the latter are not commenced by the City within the 10 year period the obligations of the carriers become null and void. There is no difference, insofar as we are here concerned, between the grade separations the City may construct at its option within the 10 year period after completion date under Section 11 and the provisions of Section 12 to the effect that the affected carrier or carriers must bear a stipulated portion of the cost of construction by the City of any grade separation not constructed pursuant to Section 11 if such construction is undertaken within 20 years after completion date. Neither is more mandatory or permissive than the other. The cost burden on the carrier or carriers under Section 12 is as much of a contractual obligation under the Terminal Agreement as is the similar burden involved in construction of those grade separations which the City may undertake within the TO year period under Section 11. In both cases the carrier is released from the obligation of paying its proportion of the cost if the work is not commenced within the respective 10 or 20 year time period. As the grade separations the City is now considering designing and constructing will be built under Section 12 of the Terminal Agreement, they come under the Terminal Agreement itself. The construction, planning and design of the grade separations under Section 12 properly come under the supervision and control of the Terminal Board as provided by Section 1, paragraph B of the Terminal Agreement, which we have quoted hereinabove.
The only question before us is whether or not the New Orleans Railroad Terminal Board is a validly existing legal entity and agency of the City of New Orleans and on the evidence contained in this record we hold that it is. As the foundation of plaintiff’s suit is the alleged fact that the Board has expired, the suit must be dismissed under the first ground upon which the exceptions are based and a consideration of the second and third grounds is unnecessary.
The judgment appealed from is affirmed.
Affirmed.